IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ORSINO IACOVONE, | : | |
| | : | Case No. 2:03-cv-652 |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE GEORGE C. SMITH |
| | : | |
| | : | |
| REGINALD A. WILKINSON, *et al.*, | : | Magistrate Judge Norah McCann King |
| | : | |
| Defendants. | : | |


REPORT AND RECOMMENDATION

Plaintiff, a state inmate, brings this action under 42 U.S.C. §1983 ("Section 1983")

alleging that he has been denied his rights under the Constitution of the United States during the

course of his incarceration at the Southern Ohio Correctional Facility and the Ohio State

Penitentiary.  This matter is before the Court on *Defendants' Motion to Dismiss*.  Doc. No. 48.[1]

For the reasons that follow, it is **RECOMMENDED** that *Defendants' Motion to Dismiss* be

**GRANTED** in part and **DENIED** in part.

---

[1]On July 5, 2005, nearly two months after defendants filed their motion to dismiss, plaintiff filed *Plaintiff's Second Motion to Compel*.  Doc. No. 56.  In that motion, plaintiff does not contend that any of the discovery issues about which he complains bear in any way on his ability to respond to *Defendants' Motion to Dismiss*.  Additionally, in *Plaintiff's Opposition to Defendants' Motion to Dismiss*, Doc. No. 57, he likewise does not argue that he is in need of the disputed discovery to adequately defend against *Defendants' Motion to Dismiss*.  Consequently, the Court determines that it is unnecessary to consider *Plaintiff's Second Motion to Compel* to adequately address *Defendants' Motion to Dismiss*.  The Court will consider *Plaintiff's Second Motion to Compel* in due course.

I.      RELEVANT FACTS

Only plaintiff's first, second and sixth claims for relief are the subject of *Defendants'*

*Motion to Dismiss*.  Doc. No. 48.  Thus, the Court will discuss the facts related to only those

three claims.

The original complaint was filed on July 23, 2003.  Subsequently, this Court conducted

the initial screening of the complaint as required by 28 U.S.C. §1915A.  Doc. No. 23.  Pursuant

to its initial screening, the Court dismissed plaintiff's sixth claim for failure to state a claim upon

which relief could be granted, determining that plaintiff had failed to exhaust available

administrative remedies with regard to that claim.[2]  Doc. No. 23.  In addition, in that same

*Order*, the Court granted plaintiff's motion to amend the complaint with regard to the remaining

causes of action, Doc. No. 21, and directed the Clerk to file *Plaintiff's First Amended Complaint*,

attached to the motion to amend.  Doc. No. 23.

On October 22, 2004, the Clerk filed *Plaintiff's First Amended Complaint*.  Doc. No. 24.

The amended complaint includes the sixth claim for relief that this Court had previously

dismissed and sets forth six additional claims for relief based on other alleged violations of

plaintiff's constitutional rights.

In the original complaint and in *Plaintiff's Response in Opposition to Defendants' Motion*

*to Dismiss*, plaintiff alleges that his first claim for relief arose on November 8, 2000, when he

was denied due process and the equal protection of the law because certain prison officials

---

[2]The Court notes that any claims that survive the initial screening under 28 U.S.C.
§1915A may nevertheless be the subject of a later motion to dismiss under Rule 12(b)(6) of the
Federal Rules of Civil Procedure.  *See, e.g., Dickerson v. Parnell*, 101 Fed. Appx. 587, 588 (6th
Cir. 2004) (affirming trial court's dismissal under Rule 12(b)(6) of claims that had survived
initial screening under 28 U.S.C. §1915A).

refused to acknowledge that he had timely filed a disciplinary appeal.  Doc. Nos. 2, 57.  The

amended complaint does not specifically indicate the date this claim allegedly arose.

Plaintiff's second claim for relief alleges that defendants R. Cuevas and Mike Henyard,

both prison correctional officers ("C.O.(s)"), violated his "Eighth and Fourteenth Amendment

rights on or about May 5, 2001 by subjecting plaintiff to excessive use of

force . . . ."  *Plaintiff's First Amended Complaint*, at 5.  Plaintiff alleges that he initiated

administrative procedures as to this claim by filing an *Informal Complaint Resolution.  Id.*,

*Informal Complaint Resolution* attached thereto.  The grievance was assigned "Grievance

Number 06-01-39."  *Id.*  Plaintiff expressly alleges that he exhausted the grievance procedure in

Grievance Number 06-01-39.[3]  *Id.*, at 5.

## II.    STANDARD OF REVIEW

Defendants move to dismiss plaintiff's first, second and sixth claims for failure to state a

claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the

complaint.  *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In

determining whether dismissal on this basis is appropriate, the complaint must be construed in

the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203

---

[3]The grievance procedure available to plaintiff consists of three steps.  *Using the Inmate Grievance Procedure*, attached to *Plaintiff's First Amended Complaint*.  First, an inmate must file an informal complaint.  *Id.*  If that complaint does not result in a satisfactory decision to the inmate, he can appeal the decision to the Inspector of Institutional Services.  *Id.*  Finally, if that appeal is found to be without merit, the inmate can appeal the decision to the Chief Inspector. *Id.*

(6th Cir. 1996);  *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994).

A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46

(1957).

Thus, this Court will grant a motion to dismiss under Rule 12(b)(6) if the complaint is

without merit because of an absence of facts or law to support the claims in it, or if on the face of

the complaint there is an insurmountable bar to relief.  *See generally, Rauch v. Day & Night Mfg.*

*Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

## III.    ANALYSIS

In *Defendants' Motion to Dismiss*, defendants argue that plaintiff failed to exhaust his

administrative remedies with regard to his second and sixth claims for relief.  Because this case

does not present complete exhaustion of every claim, defendants contend, the entire case must be

dismissed.  Alternatively, defendants argue that plaintiff's first and second claims for relief must

be dismissed because they are untimely under the applicable statute of limitations.

For purposes of ruling on *Defendants' Motion to Dismiss*, the Court accepts as true all

plaintiff's well-pleaded facts.  *See Scheuer v. Rhodes,* 416 U.S. at 236.

### A.    Exhaustion Standard for Prisoners

The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner to exhaust

administrative remedies available to the prisoner prior to filing an action in a federal court.  42

U.S.C. §1997e(a) (2004).  The PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

*Id.*  The plaintiff-prisoner has the burden of proving that a grievance has been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002), and the prisoner must attach documentation to the complaint as proof.  *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).  "Exhaustion is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative system would be 'futile.'  *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999)."  *Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005).

In addition, the United States Court of Appeals for the Sixth Circuit recently adopted the "total exhaustion" rule, which requires this Court to dismiss without prejudice a complaint that presents both exhausted and unexhausted claims, *i.e.*, a "mixed complaint."  *Jones Bey*, 407 F.3d at 805.  The total exhaustion rule leaves a  prisoner whose mixed complaint is dismissed by the district court with two options:

> First, he could wait until all of his claims are exhausted and re-file the action at that time.  Or, he could simply institute an action with only the exhausted claims, and then later bring other actions in court after the other issues have been fully addressed through the prison grievance process.

*Id.*, at 808.

Finally, grievances filed in an attempt to exhaust administrative remedies must reasonably inform prison officials of the individual subjects of the grievance so that those officials are given the opportunity to address the claims before a suit is brought in federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001);  *Walton v. Bouchard*, 136 Fed. Appx. 846, 849 (6th Cir. 2005).  The purpose of the "exhaustion requirement is to provide states the first opportunity to resolve problems themselves."  *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

**B.     Application**

In the case *sub judice*, defendants contend that plaintiff failed to exhaust his second and sixth claims for relief.  The Court disagrees.

    1.    <u>Plaintiff's Second Claim for Relief</u>

In *Defendants' Motion to Dismiss*, defendants argue that, pursuant to the total exhaustion rule recently adopted by the Sixth Circuit in *Jones Bey*, *Plaintiff's First Amended Complaint* must be dismissed because plaintiff failed to exhaust his administrative remedies with regard to his second claim for relief.  *See Jones Bey*, 407 F.3d at 805.  Defendants' argument is not well-taken.

In plaintiff's second claim for relief, he alleges that defendants Cuevas and Henyard violated his constitutional rights on or about May 5, 2001, by subjecting him to excessive use of force.  *Plaintiff's First Amended Complaint*, at 5.  Plaintiff instituted the grievance procedure, filing Grievance Number 06-01-39, based on the May 5, 2001 incident.  *Id., Informal Complaint Resolution* attached thereto.  Plaintiff alleges that he exhausted the grievance procedure with regard to Grievance Number 06-01-39.  *Id.*

Defendants agree that plaintiff exhausted the grievance procedure with regard to Grievance Number 06-01-39.  Defendants argue, however, that because Grievance Number 06-01-39 did not name defendants Cuevas and Henyard as the officers who allegedly used excessive force against plaintiff on May 5, 2001, plaintiff has not exhausted his administrative remedies with regard to those two defendants.  Defendants' argument is not well-taken.

While it is true that, "[f]or a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). An inmate, however, "need not identify each officer by name when the identities of the particular officers are unknown." *Woolum*, 337 F.3d at 734. "Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Burton*, 321 F.3d at 575.

The fair notice standard for determining administrative exhaustion does not disturb the policies advanced by amended 42 U.S.C. §1997e. *Id.* Congress amended §1997e to reduce the quantity and improve the quality of prisoner lawsuits. *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The United States Court of Appeals for the Sixth Circuit explains:

> Administrative exhaustion reduces the quantity of prisoner suits by giving state officials an opportunity to take corrective action in response to prisoner grievances and, thereby, eliminates the need for some claims to be litigated, particularly frivolous claims. Administrative exhaustion improves the quality of prisoner suits by facilitating the development of "an administrative record that clarifies the contours of the controversy" in advance of litigation.
>
> A fair notice standard continues to give state prison officials first opportunity to respond to a prisoner's allegations of mistreatment or misconduct. If a district court determines that prison officials have not been given fair notice of the claim being litigated against a defendant, the court will dismiss the claim against that defendant for failure to exhaust. Because a prisoner's allegations of mistreatment and misconduct will be reviewed and acted upon first by prison officials, the district courts also will continue to receive the benefit of an administrative record that clarifies the controversy. Accordingly, the legislative purposes of § 1997e . . . will not be impaired.

*Id.* (internal citations omitted).

In the instant case, plaintiff filed Grievance Number 06-01-39, alleging that "C.O.

7

Michaels" and an unnamed officer used excessive force against him on May 5, 2001. *Informal Complaint Resolution*, attached to *Plaintiff's First Amended Complaint*. Plaintiff explained in detail the events surrounding his claim. *Id.* Specifically, plaintiff complained that, during the May 5, 2001 incident, "C.O. Michaels" used excessive force against him and that an officer, otherwise unnamed but "working with Michaels," held plaintiff's arm and laughed at him. *Id.* Plaintiff stated that his cell was "shook down and contraband was supposedly found." *Id.* In addition, after he was uncuffed, Plaintiff claimed that "the other C.O. told C.O. Michaels that I spit on C.O. Michaels." *Id.*

In response, the Institutional Inspector stated that "[t]here is no officer named Michaels that works in D Block, and [plaintiff] did not offer a description of the officer against whom the allegations are made. . . ." *Disposition of Grievance*, attached to *Plaintiff's First Amended Complaint*. Through the grievance process, plaintiff appealed the Institutional Inspector's disposition to the Chief Inspector, arguing that the Institutional Inspector made "no attempt" to "identify either officer involved in the assault." *Decision of the Chief Inspector on a Grievance Appeal*, attached to *Plaintiff's First Amended Complaint*. The Chief Inspector stated that:

> The alleged officer who you claimed assaulted you does not work in the area in question. You were the person who identified him. Therefore, the [Institutional Inspector] did attempt to identify the officer in question.

*Id.*

The Chief Inspector, however, failed to acknowledge the fact that the Institutional Inspector's investigation disclosed the details of the May 5, 2001, incident upon which Grievance 06-01-36 was based. In his *Disposition of Grievance*, the Institutional Inspector wrote:

8

> The officer's station logbook offers evidence that a stinger was found during a shakedown of Inmate Iacovone's cell on May 5, 2001. The stinger was concealed inside Inmate Iacovone's mattress. Further, an entry later in that same day records that Inmate Iacovone spit on an officer through the cuff port after his handcuffs were removed. Conduct reports were written; witness statements are on file; and photographs were taken regarding both incidents.

*Disposition of Grievance*, attached to *Plaintiff's First Amended Complaint*.

The facts set forth by the Institutional Inspector regarding the May 5, 2001, "shakedown" of plaintiff's cell, the finding of contraband and plaintiff's alleged spitting on an officer after he was uncuffed unquestionably describe the May 5, 2001, incident about which plaintiff complained in Grievance Number 06-01-39. Moreover, the *Conduct Report* to which the Institutional Inspector refers in his *Disposition of Grievance*, is dated May 5, 2001, and provides:

> On the above date and time I officer R. Cuevas while uncuffing Inmate Iacovone No.304050 Lock D8-25 overheard Inmate Iacovone tell C.O. Henyard that he (Inmate) was one step away from death row and wouldn't hesitate to kill officer Henyard. Inmate Iacovone described the officers [*sic*] car and made threatening comments about C.O. Henyards [*sic*] family. When I[nmate] Iacovone was uncuffed he immediately knelt and spit on the back of officer Henyards [*sic*] pants.

*Exhibit B*, attached to *Defendants' Motion to Dismiss*.

The Court concludes that, at the first step of the grievance procedure, *i.e.*, the *Informal Complaint Resolution*, plaintiff described the May 5, 2001, incident sufficiently to enable prison officials to identify C.O. Cuevas and C.O. Henyard as the officers about whom plaintiff was complaining in Grievance Number 06-01-39. And, indeed, it appears that, during the investigation of plaintiff's Grievance Number 06-01-39, prison officials reviewed the *Conduct Report* that clearly identified C.O. Cuevas and C.O. Henyard as the officers involved in the

events which constitute the basis of plaintiff's Grievance Number 06-01-39.  Consequently, prison officials had the opportunity to attempt to resolve the dispute between plaintiff and C.O. Cuevas and C.O. Henyard before plaintiff filed suit in this Court.  That is all that the exhaustion provisions of the PLRA requires.  The fact that prison officials chose not to attempt to resolve plaintiff's complaint does not militate a contrary result.

Accordingly, the Court concludes that plaintiff did exhaust available administrative remedies with regard to defendants Cuevas and Henyard.  The Court **RECOMMENDS** that *Defendants' Motion to Dismiss* plaintiff's second claim for relief based on failure to exhaust be **DENIED**.

2.      Plaintiff's Sixth Claim for Relief

In *Defendants' Motion to Dismiss*, defendants also argue that, pursuant to the total exhaustion rule recently adopted by the United States Court of Appeals for the Sixth Circuit in *Jones Bey*, *Plaintiff's First Amended Complaint* must be dismissed because this Court already concluded that plaintiff failed to exhaust his administrative remedies with regard to his sixth claim for relief.  *See Jones Bey*, 407 F.3d at 805.  Defendants' argument is not well-taken.

This Court dismissed plaintiff's sixth claim for relief in the same *Order* in which it granted plaintiff's motion to amend his complaint with regard to claims other than plaintiff's sixth claim for relief.  Doc. No. 23.  The Court directed the Clerk to file plaintiff's tendered amended complaint, which was attached to his motion.  *Id.*  On October 22, 2004, the Clerk filed plaintiff's tendered amended complaint.  Doc. No. 24.  Because the amended complaint was tendered to the Court before it issued its *Order* dismissing plaintiff's sixth claim for relief, the amended complaint, as tendered, included plaintiff's sixth claim for relief.  This Court, however,

dismissed plaintiff's sixth claim for relief <u>before</u> his amended complaint was filed.  Doc. No. 23.

That claim is therefore not a part of this action.

A sister district court recently considered a case that presented the same factual scenario

as does this case.  In *Ford v. Rodda*, No. 99-10090-BC, 2005 U.S. Dist. LEXIS 22156 (E.D.

Mich., Sept. 25, 2005), the defendants filed a motion to dismiss the plaintiff's entire complaint

because, as originally filed, the complaint contained both exhausted and unexhausted claims.

The defendants argued that the Sixth Circuit's total exhaustion rule requires the dismissal of the

entire case.  In that case, however, like the case *sub judice*, the court had previously dismissed

the unexhausted claims prior to the date *Jones Bey* was issued by the Sixth Circuit.  The Court

finds the following reasoning persuasive:

> Although the case law tends to support the retroactive application of *Jones Bey* in
> the present case, the defendants presume that the effect of applying *Jones Bey*
> retroactively to [the plaintiff's] complaint is the dismissal of the entire action
> without prejudice.  However, the unexhausted claims were dismissed by the Court
> in September of 2002 and thus are no longer part of the complaint, effectively
> amending the complaint so that only exhausted claims remain. It is the amended
> complaint to which the *Jones Bey* rule must be applied since it, not the original
> complaint, is the operative legal document in the case. *See Parry v. Mohawk
> Motors of Michigan, Inc*., 236 F.3d 299, 306-7 (6th Cir. 2000) (citing *Karnes v.
> Poplar Bluff Transfer Co. (In re Atlas Van Lines, Inc.)*, 209 F.3d 1064, 1067 (8th
> Cir. 2000) (holding that when a plaintiff files an amended complaint, the new
> complaint supersedes all previous complaints and controls the case from that
> point forward).
>
> To dismiss the case now, the Court would have to conclude that when it dismisses
> a claim from a complaint, the complaint still for all legal purposes contains the
> dismissed claim. The defendants provide no case law that would suggest that
> *Jones Bey* was meant to change the effect of a dismissal on a complaint.  The
> operative complaint now before the Court is not a "mixed" complaint, and *Jones
> Bey* does not mandate its dismissal.

*Id.*, at *10-11.

In the instant case, when this Court dismissed plaintiff's sixth claim for relief, in October

2004, his complaint was amended so that it no longer contained that unexhausted claim. The complaint as amended is the "operative legal document." *See Ford v. Rodda, supra.* Defendants point to no case law, nor can this Court find any case law, that would suggest that *Jones Bey* was meant to change the effect of the dismissal of a claim on a complaint. Thus, the Court concludes that plaintiff's sixth claim for relief is not currently before the Court and any argument related to it is of no moment.

Consequently, the Court **RECOMMENDS** that *Defendants' Motion to Dismiss* plaintiff's sixth claim for relief based on failure to exhaust be **DENIED**.

### C. Statute of Limitations

In *Defendants' Motion to Dismiss*, defendants ask that plaintiff's first and second claims for relief be dismissed based on the statute of limitations. State statutes of limitations and tolling principles apply to claims under Section 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69, 275 (1985). For civil rights actions filed in Ohio under Section 1983, the statute of limitations is two (2) years from the date the cause of action accrued. Ohio Revised Code ("O.R.C.") §2305.10; *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (*en banc*).

### 1. Plaintiff's First Claim for Relief

Plaintiff's first claim for relief arose on November 8, 2000. Therefore, plaintiff was required to file his Section 1983 claim by November 8, 2002. *See Pendleton*, 869 F.2d at 992. As this Court explained in its October 18, 2004, *Order*, however, the complaint in this case could not be deemed to have been "filed" earlier than June 6, 2003:

> The Court received the original complaint and application for leave to proceed *in forma pauperis* on June 9, 2003. Plaintiff could not have mailed the documents earlier than June 6, 2003, *i.e.*, the date that a prison official signed the certificate attached to plaintiff's *in forma pauperis* application.

Doc. No. 23, at 3.  It therefore appears, and defendants contend, that plaintiff's first claim for relief is barred by the two-year statute of limitations.

Plaintiff argues, however, that the application of the Ohio savings statute, O.R.C. §2305.19, serves to toll the running of the statute of limitations as to this claim.  Prior to filing the original complaint, on April 8, 2002, plaintiff filed a petition for a writ of mandamus in the Franklin County Court of Appeals, Case Number 02-AP-400 ("*Appellate Case*").  *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*, at 2.  Plaintiff requested that the appellate court order defendant Reginald A. Wilkinson to answer the disciplinary appeal that is the subject matter of the first claim for relief.  *Id.*  Plaintiff voluntarily dismissed the *Appellate Case* on July 3, 2002.  *Exhibit A*, attached to *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*.

Plaintiff contends that the filing of the *Appellate Case* on April 8, 2002 and his voluntary dismissal of that case pursuant to Rule 41(A)(1) of the Ohio Rules of Civil Procedure on July 3, 2002, fall within the scope of O.R.C. §2305.19.  Thus, plaintiff concludes, he was permitted to file his first claim for relief in this Court any time prior to July 3, 2003, *i.e.*, one year after the date he voluntarily dismissed the *Appellate Case*.

At the time plaintiff voluntarily dismissed the *Appellate Case* and at the time he filed this

case, O.R.C. §2305.19(A)[4] provided in pertinent part:

> In an action commenced, or attempted to be commenced, . . . if the plaintiff fails
> otherwise than upon the merits, and the time limited for the commencement of
> such action at the date of . . . failure has expired, the plaintiff . . . may commence
> a new action within one year after such date.

*Haynes v. Ohio Dept. of Rehab. & Corrections*, 2005-Ohio-5099, ¶14 (Franklin County 2005).

Former O.R.C. §2305.19 "has no application unless an action was timely commenced but

was dismissed without prejudice after expiration of the applicable statute of limitations." *Id.*,

¶15 (citing *Lewis v. Connor*, 21 Ohio St.3d 1, 4 (1985)). "This statute applies to save a

plaintiff's action otherwise barred by the statute of limitations when the original suit and the new

action are 'substantially similar.'" *Fiske v. U.S. Health Corp. of S. Ohio*, 2005 Ohio 1295,

*P19 (Scioto County 2005) (citing *Children's Hosp. v. Ohio Dept. of Public Welfare*, 69 Ohio

St.2d 523, 525 (1982)). Further, "a voluntary dismissal pursuant to Civ. R. 41(A)(1) constitutes

failure 'otherwise than upon the merits' within the meaning of the savings statute, R.C.

2305.19." *Frysinger v. Leech*, 32 Ohio St.3d 38, 43 (1987). In addition, O.R.C. § 2305.19

"should be 'liberally construed in order that controversies . . . be decided upon important

substantive questions rather than upon technicalities of procedure.'" *Kinney v. Ohio Dept. of*

---

[4]"On June 2, 2004, R.C. 2305.19 was amended to permit the refiling of an action 'within
one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than
upon the merits or within the period of the original applicable statute of limitations, whichever
occurs later.'" *Nationwide Mut. Ins. Co. v. Zimmerman*, 2004-Ohio-7115, ¶ 20, n.1 (Stark
County 2004). This Court must consider the version of the statute in effect at the time plaintiff
voluntarily dismissed the *Appellate Case* and at the time he filed this case this action, " because
R.C. 1.48 presumes prospective operation of a statute unless the statute was expressly made
retrospective. R.C. 2305.19, as amended, does not expressly provide for retrospective
application." *Id.*

14

*Admin. Serv.*, 30 Ohio App.3d 123, 126 (1986) (citing *Greulich v. Monnin*, 142 Ohio St. 113, 116 (1943)).  *See also Sherman v. Air-Reduction Sales Co.*, 251 F.2d 543, 546 (6th Cir. 1958) (citing same).

Plaintiff contends, and defendants do not dispute, that the *Appellate Case* and plaintiff's first claim for relief are "substantially similar,"[5] and that plaintiff's voluntary dismissal of that case pursuant to Rule 41(A)(1) was a failure "otherwise than upon the merits."  Instead, defendants argue that O.R.C. §2305.19 applies only to actions dismissed <u>after</u> the statute of limitations period for the original action, here the *Appellate Case*, had expired.  Defendants conclude that, because "Plaintiff voluntarily dismissed the original action before the two years statute of limitations period expired on November 8, 2002. . . . the Savings Statute does not apply to Plaintiff's Claim One."  *Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss*, at 4.  The Court agrees.

Although the current version of O.R.C. §2305.19 applies to certain actions that fail otherwise than upon the merits either before or after the original action's statute of limitations expires, the previous version, which applies to plaintiff's first claim for relief, applied only to actions that failed otherwise than upon the merits after the original statute of limitations had run. In the instant case, plaintiff filed the *Appellate Case* on April 8, 2002, and voluntarily dismissed the *Appellate Case* on July 3, 2002, before the applicable two-year statute of limitations had

---

[5]The Court is not as convinced that the actions at issue here are substantially similar. But, since defendants do not dispute that element, and the element does not bear on this Court's jurisdiction, the Court will not independently do so.  *See Kinney*, 30 Ohio App.3d at 125 ("By its terms, R.C. 2305.19 does not restrict the jurisdiction where a new action may be maintained, but, rather, focuses on whether the particular cause of action is subject to the one-year provision.").

expired.  Thus, O.R.C. §2305.19 does not serve to toll the running of the statute of limitations as

to this claim.

Therefore, even accepting all plaintiff's well-pleaded facts as true, the Court concludes

that plaintiff's first claim for relief does not fall within the scope of O.R.C. §2305.19.  Plaintiff's

first claim arose on November 8, 2000; that claim should therefore have been filed by November

8, 2002.  Plaintiff did not do so but instead filed his first claim for relief on June 6, 2003.

Accordingly, the Court **RECOMMENDS** that *Defendants' Motion to Dismiss* plaintiff's

first claim for relief based on the statute of limitations be **GRANTED**.

2.      Plaintiff's Second Claim for Relief

Plaintiff's second claim for relief arose on May 5, 2001.  Thus, it would appear this claim

is barred by the two-year statute of limitations.  Plaintiff, however, argues that the application of

the Ohio tolling statute, O.R.C. §2305.16, tolled the running of the statute of limitations during

the time he was of "unsound mind."

In *Plaintiff's Opposition to Defendants' Motion to Dismiss*, plaintiff does not specify the

time period he claims to have been of unsound mind;  instead, he merely asserts that he was of

unsound mind before and after a September 11, 2002, suicide attempt.  Plaintiff, however,

submits documents relating to a mental illness and dating from May 2000 to February 2003;  he

argues that these documents prove that he was of unsound mind during that time period.

*Exhibits D, E, F, F1, F2, F3*, attached to *Plaintiff's Response in Opposition to Defendants'*

*Motion to Dismiss*.

O.R.C. §2305.16 provides:

Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14
of the Revised Code, if a person entitled to bring any action mentioned in those

16

sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.

After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.

"Based upon the language of R.C. 2305.16, the type of evidence necessary to show that a person was of unsound mind and, therefore, entitled to the benefit of tolling pursuant to its provisions, differs depending upon whether it is claimed that she was of unsound mind at the time the cause of action accrued or that she became of unsound mind after accrual of the cause of action." *Bradford v. Surgical & Med. Neurology Assoc., Inc.*, 95 Ohio App.3d 102, 106 (Summit County 1994).  If a plaintiff claims that he became of unsound mind only after the cause of action accrued, the second paragraph of O.R.C. §2305.16 applies.  *Firestone v. Galbreath*, 747 F. Supp. 1556, 1566 (S.D. Ohio 1990), *rev'd in part on other grounds*, 25 F.3d 323 (6th Cir. 1994).  In such event, the evidence of unsound mind must include either an adjudication by a court or evidence that the plaintiff was institutionalized or hospitalized for a condition or disease that caused him or her to be of unsound mind.  *Bradford*, 95 Ohio App.3d at 106.

If, however, a plaintiff claims that he was of unsound mind at the time the cause of action accrued, the first paragraph of O.R.C. §2305.16 applies.  *Firestone*, 747 F. Supp. at 1566.  When applying the first paragraph of O.R.C. §2305.16, any otherwise admissible evidence tending to support a claim of unsound mind may be used to establish entitlement to tolling.  *Bradford*, 95

17

Ohio App.3d at 106.  Additionally, a plaintiff invoking the first paragraph of O.R.C. §2305.16,

has the additional burden of proving inability to protect his or her legal rights:

> Where a plaintiff claims to have been of unsound mind at the time a cause of
> action accrues, so as to suspend the statute of limitations, which claim is denied
> by the defendant, plaintiff has the burden of proving that he was suffering from
> some species of mental deficiency or derangement, so as to be unable to look into
> his affairs, properly consult with counsel, prepare and present his case and assert
> and protect his rights in a court of justice . . . .

*McKay v. Cutlip*, 80 Ohio App.3d 487, 490 (Lorain County 1992) (citing *Bowman v. Lemon*,

115 Ohio St. 326 (1926), and *Lowe v. Union Trust Co.*, 124 Ohio St. 302 (1931)).

In the case *sub judice*, plaintiff asserts that he was of unsound mind from May 2000

through February 2003, *i.e.*, before the May 5, 2001, accrual of his second claim for relief.  Thus,

the first paragraph of O.R.C. §2305.16 applies.  Defendants challenge this assertion.  Therefore,

plaintiff must prove that his mental state rendered him unable to look into his affairs, prepare and

present his case and assert and protect his rights in a court of justice.  Plaintiff has not carried,

and cannot carry, this burden.

Although the Court is not unsympathetic to plaintiff's struggles with mental illness,

plaintiff's actions leave no room to doubt his ability to look into his affairs, prepare and present

his case and assert his rights in a court of justice.  Since at least October 2000, before his second

cause of action arose, plaintiff has filed no fewer than three dozen appeals, grievances and

inmate demand statements.  *Exhibit C-1-1* through *Exhibit C-8-5*, attached to *Plaintiff's Motion*

*for an Order Directing Defendants to Respond to Plaintiff's Civil Rights Complaint*; Doc. No.

19.  Additionally, plaintiff sent no fewer than seventeen letters to prison administration and staff

attorneys, all related to the issues before the Court in this lawsuit.  *Id.*  Further, on April 8, 2002,

plaintiff filed the *Appellate Case* in the Franklin County Court of Appeals.  *Plaintiff's*

18

*Opposition to Defendants' Motion to Dismiss*, at 2.  Plaintiff also affirmatively voluntarily

dismissed the *Appellate Case* under Rule 41(A)(1) of the Ohio Rules of Civil Procedure on July

3, 2003.  *Id.*, *Exhibit A*, attached thereto.

Therefore, even accepting all plaintiff's well-pleaded facts as true, the Court concludes

that plaintiff's mental state between October 2000 and February 2003 was not such as to give

rise to the protection of  Ohio's tolling statute.  Plaintiff's second claim for relief arose on May

5, 2001; that claim should therefore have been filed by May 5, 2003.  Plaintiff did not do so but

instead filed his second claim for relief on June 6, 2003.

Accordingly, the Court **RECOMMENDS** that *Defendants' Motion to Dismiss* plaintiff's

second claim for relief based on the statute of limitations be **GRANTED**.

**WHEREUPON**, in light of the foregoing analysis, the Court **RECOMMENDS** that

*Defendants' Motion to Dismiss*, Doc. No. 48, as it relates to plaintiff's first and second claim for

relief be **GRANTED** and as it relates to plaintiff's remaining claims for relief be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that

party may, within ten (10) days, file and serve on all parties objections to the *Report and

Recommendation*, and the part thereof in question, as well as the basis for the objection thereto.

28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Responses to objections must be filed within ten

(10) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and

Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and

of the right to appeal the decision of the District Court adopting the *Report and

Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985);  *Harris v. City of Akron,* 20 F.3d

1396 (6th Cir. 1994);  *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers,*

*AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).


December 2, 2005                                         *s/Norah McCann King*
Date                                                    Norah M<sup>c</sup>Cann King
                                                        United States Magistrate Judge