IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ORSINO IACOVONE,** | : |
| | :    Case No. 2:03-cv-652 |
| **Plaintiff,** | : |
| | : |
| v. | :    **JUDGE GEORGE C. SMITH** |
| | : |
| | : |
| **REGINALD A. WILKINSON,** *et al.*, | :    **Magistrate Judge Norah McCann King** |
| | : |
| **Defendants.** | : |

## REPORT AND RECOMMENDATION

Plaintiff, a state inmate, brings this action under 42 U.S.C. §1983 ("Section 1983") alleging that he has been denied his rights under the Constitution of the United States and under state and federal law during the course of his incarceration at the Southern Ohio Correctional Facility ("SOCF") and the Ohio State Penitentiary ("OSP"). This matter is before the Court on *Defendants' Motion for Summary Judgment*. Doc. No. 69. For the reasons set forth below, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment* be **GRANTED**.

**I.    FACTS**

Plaintiff was incarcerated at OSP on December 21, 2000, and was transferred to SOCF on September 13, 2002, where he is currently incarcerated. *Amended Complaint* at 3. On July 23, 2003, plaintiff filed a verified complaint ("*Complaint*") in this action naming thirty defendants and presenting eight claims. Doc. No. 2. Subsequently, this Court conducted the initial screen of the complaint required by 28 U.S.C. §1915A, and dismissed plaintiff's sixth claim for failure to state a claim upon which relief can be granted. Doc. No. 23. Further, in that same *Order*, the

Court granted plaintiff's motion to amend the complaint, Doc. No. 21, with regard to the remaining causes of action.

On October 22, 2004, the *Amended Complaint* was filed. Doc. No. 24. The *Amended Complaint* added no new claims, but rather withdrew plaintiff's fourth claim, withdrew his claims against thirteen of the thirty originally named defendants and incorporated the verified statements of facts from the *Complaint*. *Id.* In an *Order* dated June 14, 2005, two more defendants were dismissed. Doc. No. 52. Thus, remaining as named defendants in this action are the former Director of the Ohio Department of Rehabilitation and Correction ("ODRC") Reginald A. Wilkinson, SOCF Administrative Assistant Larry Green, SOCF Corrections Lieutenant Wayne Fout, OSP Warden Todd Ishee, OSP Administrative Assistant Mr. Fletcher, OSP employee David Ritz, OSP employee Robert Wolfe, OSP employee Gina Nail, OSP Corrections Officer R. Klienknecka, OSP Corrections Officer R. Cuevas, OSP Corrections Officer Mike Henyard, OSP Corrections Lieutenant Evans and SOCF Chief Cashier Roger Weaks. *Amended Complaint* at 1-2. Plaintiff's remaining causes of action allege violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, excessive force in violation of the Eighth Amendment to the United States Constitution and violations of federal and state laws regarding "accounting practices." *See Amended Complaint* (Counts One, Two, Three, Five, Seven and Eight).

On April 7, 2006, defendants filed *Defendants' Motion for Summary Judgment*. Doc. No. 69. On May 11, 2006, Cheryl A. Alikhan moved to appear, *pro hac vice*, on behalf of plaintiff. Doc. No. 71. This Court granted that motion on May 23, 2006. Doc. No. 74.

A status conference was held on June 8, 2006. Doc. No. 78. All parties were represented

2

at the conference and plaintiff was granted until August 1, 2006, to respond to *Defendants' Motion for Summary Judgment*. *Id.*

On August 2, 2006, plaintiff moved to amend the *Amended Complaint*. Doc. No. 81. After full briefing and review, this Court denied plaintiff's motion to amend and gave plaintiff two weeks to file a memorandum *contra Defendants' Motion for Summary Judgment*. Doc. No. 84. On December 19, 2006, plaintiff filed *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment* ("*Plaintiff's Memorandum in Opposition*") and, on December 29, 2006, defendants filed their reply in support of their motion for summary judgment, Doc. No. 88.

## II.     STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). In making this determination, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. The Court, however, may not make credibility determinations

or weigh the evidence. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett*, 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (J. Rice) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Additionally, in ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

### III. ANALYSIS

Plaintiff asserts all six of his remaining claims for relief under Section 1983, which in relevant part provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To succeed on a claim under Section 1983, plaintiff must show that (1) a person acting under color of state law (2) deprived him of rights secured to him by the United States Constitution or its laws. *See Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir. 2001). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Accounting Practices Claims

In his seventh cause of action, plaintiff alleges that his request for an "Inmate Demand Statement" was denied. *Amended Complaint* p. 8. *See also Complaint* ¶¶ 50(a)-(p). In his eighth cause of action, plaintiff alleges that defendant Weaks removed $69.00 from plaintiff's personal account to pay for court costs. *Id.* p. 9; *Complaint* ¶¶ 51(a)-(n).  Plaintiff contends that defendants' actions, and the administrative policies upon which they were based, are "contrary" to state and federal law regarding "accounting practices." *Id.*

In *Defendants' Motion for Summary Judgment*, defendants argue that neither the alleged refusal to provide plaintiff with a demand statement nor the prison policy regarding the handling

of inmate accounts–including deductions of court costs–raises a constitutional violation or deprivation cognizable under Section 1983. *Defendants' Motion for Summary Judgment* at 51 (citing *Meachum v. Fano*, 427 U.S. 215 (1976) for the proposition that federal courts do not sit to supervise state prisons, especially in areas of administration which are of acute interest to the states). In *Plaintiff's Memorandum in Opposition*, plaintiff fails to address this argument.

The Court concludes, as defendants correctly argue, that plaintiff's complaint about defendants' "accounting practices" fails to implicate a right secured to him by the United States Constitution or its laws. *See Albright*, 510 U.S. at 271. Consequently, even when viewing the evidence in the light most favorable to plaintiff, plaintiff cannot establish the existence of an element essential to his claims on which that he will bear the burden of proof at trial. *See Catrett*, 477 U.S. at 322. Accordingly, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment* on plaintiff's seventh and eighth claims for relief be **GRANTED**.

**B.  Plaintiff's Equal Protection Claims**

Plaintiff presents two claims[1] of violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Amended Complaint* pp. 4, 5; *Complaint* ¶¶ 40(a)-(ee), 42(a)-(vv). In his first claim for relief, plaintiff alleges that he was denied equal protection under the law by defendants' "refus[al] to acknowledge a timely filed disciplinary appeal . . . ." *Amended Complaint* p. 4. In plaintiff's third claim for relief, he alleges that he was denied equal protection because he was denied certain evidence and the opportunity to call witnesses at two Rules Infraction Board ("RIB") hearings. *Id.* p. 5-6.

---

[1] The Court notes that plaintiff asserts equal protection claims and due process claims (considered *infra*) arising out of the same factual assertions. *See Amended Complaint* pp. 4, 5; *Complaint* ¶¶ 40(a)-(ee), 42(a)-(vv).

The Equal Protection Clause of the Fourteenth Amendment applies to states and requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV. To state an equal protection claim in the prison context, a plaintiff must allege that he was treated differently than other similarly situated prisoners. *See McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Center*, 481 U.S. 279, 292-93 (1987); *Wells v. Jefferson County Sheriff Dept.*, 159 F. Supp. 2d 1002, 1008 (S.D. Ohio 2001) (J. Sargus). Further, it is incumbent on the prisoner asserting an equal protection claim to prove the existence of some purposeful discrimination. *McFarland v. Luttrell*, 51 F.3d 272, 1995 U.S. App. LEXIS 13337, at *6-7 (6th Cir. April 5, 1995) (citing *McCleskey*, 481 U.S. at 292). A plaintiff must establish that a government official intentionally discriminated against him because of his membership in a protected class. *Id.* (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). *See also Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) ("plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently. . . . [h]e would have to show that he 'was victimized because of some suspect classification, which is an essential element of an equal protection claim.'" *Booher v. United States Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988)). Thus, a plaintiff must establish that an official intentionally discriminated against him because of his poverty, race, or some other unreasonable classification. *Id.* (citing *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986)).

In the present case, plaintiff does not allege facts that could support an equal protection claim because, as defendants correctly argue, he does not identify any suspect class of which he is a member. *See Complaint* ¶¶ 40(a)-(ee), 42(a)-(vv); *Amended Complaint* p.4-6; *Defendants'*

7

*Motion for Summary Judgment* at 31-32. *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) (prisoners are not a suspect class); *see Videotape* filed at Doc. No. 70. However, plaintiff's claims would fail even if he had established that he was a member of a suspect class, because plaintiff fails to allege that any defendant intentionally discriminated against him based upon that classification. Thus, plaintiff's equal protection claims must fail because the claimed wrongs are not alleged to be directed toward him as a member of a class or group singled out for intentional discriminatory treatment.

Consequently, even when viewing the evidence in the light most favorable to plaintiff, plaintiff cannot establish the existence of elements essential to his claims on which he will bear the burden of proof at trial. *See Catrett*, 477 U.S. at 322. Accordingly, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment* on plaintiff's equal protection claims included in his first and third claims for relief be **GRANTED**.

  C.  **Plaintiff's Due Process Claims**

Plaintiff presents two claims of violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Amended Complaint* pp. 4, 5; *Complaint* ¶¶ 40(a)-(ee), 42(a)-(vv). Plaintiff's first claim for relief alleges that plaintiff was denied due process by reason of defendants' "refus[al] to acknowledge a timely filed disciplinary appeal . . . ." *Amended Complaint* p. 4. In plaintiff's third claim for relief, he alleges that he was denied due process at two RIB disciplinary proceedings because he was denied the opportunity to call witnesses and to present evidence and documentation. *Id.* p. 5. Both RIB proceedings considered a conduct report that charged plaintiff with assault in connection with a July 2, 2001, incident. The conduct report charges that defendant Corrections Officer Kleinknecht was retrieving a tray

from plaintiff's cuff port when plaintiff grabbed his right wrist, attempted to pull it through the cuff port and refused several direct orders to release it, yelling "Fuck you and it's time to pay!" *Exhibit B-17*.[2]

The RIB found plaintiff guilty of the charges in the conduct report and imposed a penalty of "level 1 placement." *Id.* Plaintiff also claims that an additional 12 to 36 months was added to his parole guideline range.[3] At the time of the additional assessment, plaintiff's guideline range was 254 to 322 months and plaintiff had served 96 months. *Id.*

The Due Process Clause of the Fourteenth Amendment provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. "'Those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005) (citing *Wilkinson v. Austin*, 125 S. Ct. 2384, 2393 (2005)). Accordingly, a procedural due process analysis addresses two questions. *Id.* "'The first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). In *Wolff v. McDonnell*, 418 U.S. 539, 556, 559-62 (1974), the United States Supreme Court articulated the procedures to which a prisoner is entitled at a disciplinary hearing, including advance written notice of the hearing, an opportunity,

---

[2] Unless otherwise noted, all exhibits referred to herein are attached to *Defendants' Motion for Summary Judgment*.

[3] The Ohio Adult Parole Authority added the additional time because of not only the assault conviction but also a conviction for attempting to convey heroin into SOCF. *Complaint* 42(vv) and *Exhibit C-1-17* attached thereto.

9

in some cases, to call witnesses and to present documentary evidence and a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, *supra* ("prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply").

Yet prisoners only enjoy these procedural safeguards to the extent necessary to protect substantive rights. *See Washington v. Harper*, 494 U.S. 210, 220 (1990) ("Procedural protections must be examined in terms of the substantive rights at stake."); *Olim v. Wakienekona*, 461 U.S. 238, 250 (1983) ("[The] constitutional purpose [of the process] is to protect a substantive interest."). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the United States Supreme Court held that the only liberty interest a prisoner may protect through Section 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Defendants argue that plaintiff cannot show that he suffered any "atypical and significant hardship," and that his procedural due process claim must fail. *Defendants' Motion for Summary Judgment* at 35-38, 44-47. This Court agrees.

Plaintiff's claim, in Count One, that defendants refused to acknowledge that he had filed a timely appeal in no way constitutes an "atypical and significant hardship" in relation to the ordinary incidents of prison life. Plaintiff has not articulated a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*, *supra*. There is simply no inherent constitutional right to an effective prison grievance procedure nor does state law create such a liberty interest. *Marcum v. Jones*, 2006 U.S. Dist. LEXIS 12004, at *5 (S.D. Ohio Mar. 3, 2006) (J. Dlott) (citing, *inter alia*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) and *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. 2003)).

Similarly, plaintiff's claim in Count Three of denial of procedural due process at the RIB hearings does not constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life that would afford plaintiff a protected liberty interest. Plaintiff complains that his security classification was increased as the result of being found guilty of assault at an RIB hearing. Prisoners, however, do not have a federally protected right in remaining at any particular security level. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)). *But see Wilkinson v. Austin,* 545 U.S. 209, 222 (2005) (transfer to "supermax" implicates the due process clause). Moreover, plaintiff's due process claim does not appear to relate to the conditions to which he was subjected at OSP (the prison at which the assault and the RIB hearing took place). Instead, plaintiff bases his due process claim on the recalculation of his parole guideline range. *See Amended Complaint* pp. 5-6; *Complaint* 42(a) - (vv).

Plaintiff does not expressly allege that the RIB hearings resulted in a change to the conditions of his confinement sufficient to trigger constitutionally mandated procedures. He alleges only that his security level was raised which, at a subsequent parole hearing, caused the Ohio Adult Parole Authority to recalculate his parole guideline range. After that recalculation, the guideline range was increased 12 to 36 months. The parole guideline range recalculation about which plaintiff complains does not give rise to the protections of due process because "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Indeed, the Constitution of the United States does not require a state to provide a parole system. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987). More

importantly, the State of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system. *See Saunders v. Williams*, 89 F. Appx 923, 924 (6th Cir. 2003); Ohio Revised Code § 2967.03; *Jago v. Van Curen*, 454 U.S. 14, 20-21 (1981); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-37 (6th Cir. 1991). *See also Swihart v. Wilkinson*, No. 05-4269, 2006 U.S. App. LEXIS 29067, at *7 ("This Court has never held that an inmate's eligibility for parole at a certain time, under a discretionary parole system, is an 'atypical and significant hardship.' [The inmate's] eligibility or non-eligibility for parole does not affect the manner in which he is confined and, thus, no liberty interest is implicated"); *Tate v. Williams*, Case No. 2:06-CV-0047, 2007 U.S. Dist. LEXIS 1941, at *34-35 (S.D. Ohio Jan. 10, 2007) (M.J. Kemp) (same).

Consequently, even when viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to raise a genuine issue of material fact as to whether he has invoked a liberty interest that would entitle him to the procedural protections set forth in *Wolff*, *supra*. Therefore, plaintiff cannot establish the existence of elements essential to his claim on which that he will bear the burden of proof at trial. *See Catrett*, 477 U.S. at 322. Accordingly, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment* on the due process claims presented in plaintiff's first and third claims for relief be **GRANTED**.

      D.      **Plaintiff's Excessive Force Claims**

Plaintiff asserts two claims of excessive force in violation of the Eighth Amendment to the United States Constitution. In plaintiff's second claim for relief, he alleges that defendants R. Cuevas, Mike Henyard and an unidentified individual, all prison correctional officers, subjected him to constitutionally impermissible excessive force on May 5, 2001, when they allegedly

slammed his head against a wall before removing him from his cell and when they yanked on his handcuffs through the cuff port after returning him to his cell. *See Complaint* ¶¶ 41(a)-(e), (f)-(h); *Amended Complaint* pp. 5, 6-7. On May 5, 2001, plaintiff was removed from his cell for a routine cell search, during the course of which defendants assertedly found contraband in the form of magazines and a "stinger." *Exhibits A*, *B-1*, *B-2*, *B-3*, *B-4*.

In plaintiff's fifth claim for relief, he alleges that, on September 9, 2002, defendant Corrections Officer Evans used excessive force by spraying four cans of pepper spray in plaintiff's cell through the cuff port for no reason and that, after the pepper spray incapacitated him, defendants sent in an extraction team to remove him from his cell. *Complaint* ¶¶ 47(d)-(g). Further, plaintiff contends that as the extraction team guided him down a stairway he was assaulted for no reason and his head was slammed into a wall. *Id.* ¶¶ 47 (f)-(q). Plaintiff alleges that he was then thrown into a strip cage where he was forced to remain even though he was having difficulty breathing because of the pepper spray. Finally, plaintiff alleges that he was then taken straight to his new cell without being given the opportunity to shower. *Id.* ¶¶ 47(s)-(u).

Initially, the Court notes that there is no dispute that defendants acted under color of state law and that these two claims are cognizable under Section 1983. *See Waters,* 242 F.3d at 358-59.

A convicted inmate's excessive force claim must be raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. U.S.

13

Const. amend. VIII. In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court "set forth the standard for analyzing excessive force claims under the Eighth Amendment: 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

"The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, 'a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain.'" *Id.* (citing *Pelfrey*, 43 F.3d at 1037). Factors to consider in determining whether the use of force was wanton and unnecessary include the extent of injury suffered by an inmate, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 556-57 (citing *Hudson*, 503 U.S. at 7). A *de minimis* use of force will not support an actionable claim, but a plaintiff may recover even if he suffers only minor injury. *See Hudson*, 503 U.S. at 9-10 ("The Eighth Amendments prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.") (internal quotation marks omitted).

"Because prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs*, 315 F.3d at

557 (quoting *Hudson*, 503 U.S. at 6). A court's retrospective analysis "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing." *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986) (citing *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Even accepting the facts as alleged by plaintiff, the force used against plaintiff on May 5, 2001, was not sufficient to support an Eighth Amendment claim. After plaintiff was ordered to face the wall to be prepared for removal from his cell, he attempted to turn and face defendant Corrections Officer Cuevas–in contravention of a direct order. *Complaint* ¶ 41(b). Defendant Cuevas was forced to make a split second decision, without the luxury of a second chance, to maintain his own safety and the safety of others, by subduing plaintiff by pushing his head back around toward the wall. This Court is constrained to afford to defendant Cuevas "wide-ranging deference" in his efforts to preserve internal order and institutional security by forcing plaintiff to obey a direct order. *See Combs, supra,* 315 F.3d at 557 (quoting *Hudson*, 503 U.S. at 6).

The events of September 9, 2002, about which plaintiff complains were captured on videotape, a copy of which was fled with the Court. Doc. No. 70. In that tape, defendant Corrections Officer Evans unequivocally ordered plaintiff to come to the door and position himself to be handcuffed in order to be moved to a different cell. Plaintiff, yelling from inside his cell, refused to comply. After issuing the order several times, and giving plaintiff ample opportunity to comply and making absolutely clear the consequence of noncompliance, *i.e.*, pepper spray would be sprayed into his cell, prison officials sprayed pepper spray into plaintiff's cell through the cuff port. This interchange was repeated three more times, during which plaintiff

continued to refuse to comply with the direct orders. At that point, after informing plaintiff that he was going to be physically removed from his cell, an extraction team of four correctional officers entered plaintiff's cell and physically removed him without further incident. While being escorted by the extraction team down the stairs and into a hallway, plaintiff began resisting their efforts. Plaintiff was pushed against a wall until he was subdued and leg restraints were placed on him. Plaintiff was then placed into the strip cage. Plaintiff demonstrated no difficulty breathing; indeed, he warned the correctional officers never to open his cuff port. Plaintiff was then taken to the shower and, finally, moved to a new cell. *See Videotape*, Doc. No. 70.

The Court easily concludes that defendants did not use unnecessary and wanton force against plaintiff while removing him from his cell on May 5, 2001, or on September 9, 2002. Indeed, plaintiff admits that on May 5, 2001, he disobeyed a direct order to face the wall while being prepared to leave his cell; the videotape clearly shows the need for the application of force on September 9, 2002, and that defendant Evans made every effort to temper the severity of the force used.

With regard the alleged "yanking" of plaintiff's handcuffs through the cuff port on May 5, 2001, the Court concludes that this incident, even as alleged by plaintiff, is insufficient to sustain an Eighth Amendment claim because the force used was *de minimis*. *See Kryling v. Sealscott*, Case No. 98-3470, 1999 U.S. App. LEXIS 20322, at *(6th Cir. Aug. 17, 1999) (citing *Hudson*, 503 U.S. at 7 and *Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993)). *See also Ford v. Rodda*, Case No. 99-CV-10090-BC 2001, U.S. Dist. LEXIS 24956, at *29 n.9 (E.D. Mich January 4, 2001) (citing as examples *Samuels v. Hawkins*, 157 F.3d 557 (8th Cir. 1998) (throwing cup of liquid on inmate who was in restraints was *de minimis* force); *Stanley v.*

*Hejirika*, 134 F.3d 629 (4th Cir. 1998) (pushing inmate firmly against wall with forearm on back of inmate's neck and taking inmate down to the ground, face down, and leaning on top of him to subdue him, when done in context of prison disturbance, was *de minimis* force); *Norman v. Taylor*, 25 F.3d 1259, 1262-64 (4th Cir. 1994) (keys swung at inmate's face which struck his thumb was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys thrown at inmate, hands put on inmate's face, and flailing arms at inmate's head was *de minimis* force); *Olson* v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Coughlin*, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force); *Neal v. Miller*, 778 F. Supp. 378, 384 (W.D. Mich. 1991) (backhand blow with fist to the groin of inmate was *de minimis* force)).

Even if the force used against plaintiff was more than *de minimis*, it was neither unnecessary nor wanton, occurring immediately after contraband had been found in plaintiff's cell and in light of plaintiff's noncompliance as he was taken from his cell. The Court concludes that the corrections officers tempered their responses to fit the situation and did not use force that was wanton and unnecessary but instead applied the necessary force in a good-faith effort to maintain and to restore discipline. *See Hudson*, 503 U.S. at 7.

Moreover, the minor nature of plaintiff's alleged injuries supports the conclusion that the force used by defendants was not excessive. *See Exhibits B-13*, *B12*, *C-2*. Plaintiff never sought medical assistance for any of the alleged injuries. *Id.*; Exhibit *D*, *Plaintiff's Deposition* at 38. *See also Owens v. Johnson*, Case No. 99-2094, 2000 U.S. App. LEXIS 15541, at \*6 (6th Cir. June 23, 2000) ("While not dispositive of the issue, *de minimis* injuries suggest *de minimis* use of

force by defendants. *See Hudson*, 503 U.S. at 8-9"); *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir. 1994) (*en banc*) (minor injuries are strong evidence that the force causing those injuries was *de minimis*). *cf. Hudson*, 503 U.S. at 10 ("blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes"); *Herring v. Lacy*, No. 95-3535, 1996 U.S. App. LEXIS 8252, at *18 (6th Cir. Ohio Mar. 11, 1996) ("concussion and a herniated disc are arguably serious injuries" and not *de minimis*).

Finally, to the extent that plaintiff contends that an unidentified officer used excessive force against him on May 5, 2001, that claim must be dismissed as a matter of law because plaintiff has failed to present any evidence concerning the identity of that officer to this Court. *See Combs*, 315 F.3d at 557. Even assuming that the facts as set forth by plaintiff are true, "there is no way for a jury to determine whether the conduct was a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, absent an allegation that certain individuals are responsible for the conduct." *Id.* (affirming trial court's dismissal of excessive force claim against unidentified officers).

Based on the foregoing, even when viewing the evidence in the light most favorable to plaintiff, the evidence is such that no reasonable jury could return a verdict for plaintiff on his claims of excessive force. *See Anderson*, 477 U.S. at 248. It is therefore **RECOMMENDED** that *Defendants' Motion for Summary Judgment* on plaintiff's second and fifth claims for relief be **GRANTED**.

**WHEREUPON**, the Court **RECOMMENDS** that *Defendants' Motion for Summary Judgment*, Doc. No. 69, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation*, and the part thereof in question, as well as the basis for the objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Responses to objections must be filed within ten (10) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994); *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers, AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).


February 8, 2007                                                                    *s/Norah McCann King*
Date                                                                                          Norah M<sup>c</sup>Cann King
                                                                                                  United States Magistrate Judge